**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

Alex Eishoo,
Petitioner
-vs-
Charles L. Ryan, et al.
Respondent.

CV-11-8052-PCT-NVW (JFM)

**REPORT & RECOMMENDATION**
**on Petition For Writ of Habeas Corpus**

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Florence, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on April 8, 2011 (Doc. 1). On June 22, 2011 Respondents filed their Response (Doc. 12). Petitioner has not filed a reply.

The Petitioner's Petition is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

The following factual background is a summary of the facts recited by the

1

Arizona Court of Appeals in denying Petitioner's direct appeal:

On July 13, 2000, the victim and his girlfriend and her daughter had traveled to Laughlin, Nevada, to gamble. The next day they separated to different casinos. And the victim never returned.

The victim appeared later that evening at the club "Dream Girls" in Bullhead City, Arizona, where he showed Petitioner and the club's cashier (Barajas) $10,000 in cash. Later, Petitioner arranged to take the club's shuttle, driven by an employee, Anthony Jackson, back to Laughlin. Petitioner also went in the shuttle.

Along the way, Petitioner suddenly strangled the victim, and had Jackson drive off on a dirt road. The victim's cash and wallet were taken and Petitioner and Jackson left his body in the desert. Petitioner gave $3,500 to Jackson, and threatened to kill Jackson's wife if he told anyone.

Jackson and Petitioner returned to Dream Girls. Petitioner told Barajas he had strangled the victim with a wire and had taken his money. Petitioner and Barajas then traveled to Las Vegas, staying several nights at the Venetian resort, and spending some $2,000 shopping.

The victim's body was eventually found. Barajas reported Petitioner's confession and their subsequent trip to Las Vegas.

Jackson identified Petitioner as the murder, but after his own conviction, asserted in a letter (Exhibit W, PCR Resp., Exhibit 3) that his own wife was the murderer.

Petitioner told police that he had been in Los Angeles on the dates of the murder, but his parents told police he was not. Petitioner told a high school friend that he had murdered the victim and he had his wallet. Petitioner told a fellow inmate that he had strangled someone and taken $10,000 from them, but claimed Jackson had done the

killing.  (Exhibit P, Mem.Dec. at 1-6.)

**B. PROCEEDINGS AT TRIAL**

On August 17, 2000, Petitioner was indicted in Mohave County Superior Court on counts of first degree murder, kidnapping, and armed robbery.  (Exhibit A, Indictment.) The state initially filed a notice of intent to seek the death penalty, but subsequently withdrew the notice.  (Exhibit B, Notices.)

Petitioner proceeded to a jury trial on January 28, 2002.  In the interim, the prosecution and defense entered into a stipulation (Exhibit NN) concerning the admission of various hearsay statements by Jackson, including the letter claiming Jackson's wife was the murderer, as well as the autopsy, casino surveillance video, and statements by Petitioner's parents.  Jackson did not testify at trial.  (*See generally* Exhibits F through J, Record. Transcript of trial.)

After a five day trial, Petitioner was found guilty on all counts.  (Exhibit PP, M.E. 2/1/02 and verdicts.)

On March 22, 2002, Petitioner was sentenced to life, with the opportunity for parole after 25 years on the murder charge, a concurrent, aggravated sentence of 13 years on the kidnapping charge, and an aggravated 3 year sentence on the robbery charge, which was made consecutive to the kidnapping charge.  (Exhibit P, Mem. Dec. at 6-7; Exhibit l R..T. 3/22/02 at 24-26.)

**C.  PROCEEDINGS ON DIRECT APPEAL**

Petitioner filed a direct appeal, raising the following claims:

(1) the trial court erred in denying the motion for acquittal on the kidnapping

count;

(2) the trial court erred in denying the motion for acquittal on the robbery count; and

(3) the trial court erred in sentencing him to a consecutive sentence on the robbery count.  (Exhibit M, Opening Brief.)

Petitioner made no reference to any federal authorities or constitutional principles in his Opening Brief (*id.* at ii-iii and generally) or his Reply Brief[1] (Exhibit O at ii and generally).

The Arizona Court of Appeals denied the appeal, and affirmed the convictions and sentences, finding sufficient evidence to support the kidnapping and robbery charges, and that the consecutive sentence was authorized.  (Exhibit P, Mem. Dec.)

Petitioner filed a Petition for Review (Exhibit Q) by the Arizona Supreme Court, attacking only the decision on the failure to acquit on the kidnapping charge, and again citing no federal authority.  The state filed a Notice of Acknowledgement (Exhibit R), relying on its response before the Arizona Court of Appeals.

On September 11, 2003, the Arizona Supreme Court denied review. (Exhibit S, Order.)

## D.  PROCEEDINGS ON POST-CONVICTION RELIEF

On October 17, 2003, Petitioner filed a *pro per* Notice of Post-Conviction Relief (Exhibit T).  Counsel was appointed, who on November 9, 2007, filed a PCR Petition

---

[1]    Petitioner's Table of Authorities in his Reply Brief did assert a reference to "9th Circuit Rules" "32(3)(4).  However, the identified page was his certificate of compliance with Arizona formatting rules and certificate of mailing, and contained no citation to the referenced 9th Circuit rule.  The 9th Circuits rules 32-3 and 32-4 concern the formatting of briefs and excerpts.

(Exhibit U) asserting a Sixth Amendment claim of ineffective assistance of counsel as a result of trial counsel's stipulation to the admission of the out-of-court statements by Jackson. That Petition also summarily asserted ineffective assistance as a result of trial counsel's: (1) failure to object to hearsay testimony by the victim's girlfriends' daughter; (2) hearsay by the detective's recitation of the daughter's statements; and (3) hearsay about statements by Jackson's wife. (*Id.* at 20.) Petitioner requested an evidentiary hearing on his claims. (Exhibit Y.)

On June 9, 2008, the PCR court denied the Petition without conducting a hearing, finding neither deficient performance nor prejudice. (Exhibit Z.) Petitioner sought reconsideration (Exhibit AA, Motion), which was denied (Exhibit CC Order 7/7/08).

Petitioner then sought review by the Arizona Court of Appeals, again raising his ineffective assistance claim based on the admission of the Jackson statements. (Exhibit DD, PFR.) On November 23, 2009, the Arizona Court of Appeals summarily denied review (Exhibit II, Order).

Petitioner then sought review from the Arizona Supreme Court, again raising this same claim. (Exhibit II, PFR.) On June 2, 2010, the Arizona Supreme Court summarily denied review. (Exhibit LL, Order.)


**E. PRESENT FEDERAL HABEAS PROCEEDINGS**

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on April 8, 2011 (Doc. 1). Petitioner's Petition asserts the following six grounds for relief:

(1) ineffective assistance of counsel re tape recorded interview (*id.* at 6);

(2) ineffective assistance of counsel re parents statements (*id.* at 7);

(3) ineffective assistance of counsel re autopsy (*id.* at 8);

(4) insufficient evidence re kidnapping (*id.* at 9);

(5) insufficient evidence re robbery (*id.* at 9.1);

(6) due process violation in consecutive sentence (*id.* at 9.2);

(7) due process violation from presumption of guilt (*id.* at 9.3).

Service and a response was ordered on April 12, 2011 (Doc. 5.)

**Response** - On June 22, 2011, Respondents filed their Response ("Answer") (Docs. 12 and 13). Respondents concede the timeliness of the Petition, argue that Grounds 2 through 7 are procedurally defaulted, and that Ground 1 is without merit.

**Reply** - Petitioner has not filed a reply, and the time to do so ran on July 22, 2011.

**Attempted Amendment** - On June 20, 2011, Petitioner filed a "Notice to File Amended Petition (Doc. 11). The Court noted the apparent intent to file an amended petition, and gave Petitioner through August 30, 2011 to file a motion to amend the Petition. (Order 8/16/11, Doc. 14.) Petitioner did not do so.

## III. APPLICATION OF LAW TO FACTS

## A. EXHAUSTION & PROCEDURAL DEFAULT

Other than his Ground 1 (ineffective assistance re taped interview), Respondents argue that Petitioner's claims were never fairly presented to the state courts, his state remedies were not properly exhausted and are now procedurally defaulted, and thus his claims are barred from habeas review.

## 1. Exhaustion Requirement

Generally, a federal court has authority to review a state prisoner's claims only if

available state remedies have been exhausted.  *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*).  The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim.  *Cartwright v. Cupp,* 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied,* 455 U.S. 1023 (1982).

### a.  Proper Forum/Proceeding

Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32."  *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir. 1994).    Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court.  This is true even where alternative avenues of reviewing constitutional issues are still available in state court.  *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).  "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v.  McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir.1999)).[2]

//

//

---

[2] Here, Petitioner was sentenced to life.  However, *Swoopes* was based upon earlier versions of Ariz.Rev.Stat. §§ 12-120.21 or 13-4031, which were subsequently amended to limit the Arizona Supreme Court's general jurisdiction to death penalty cases. Because it does not affect the outcome, the undersigned presumes for purposes of this Report & Recommendation that presentation to the Arizona Supreme Court, as well as the Arizona Court of Appeals, was required for Petitioner to properly exhaust his state remedies.

### b. Fair Presentment

To result in exhaustion, claims must not only be presented in the proper forum, but must be "fairly presented." That is, the petitioner must provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim. 28 U.S.C. § 2254; *Picard v. Connor,* 404 U.S. 270, 276-277 (1971). A claim has been fairly presented to the state's highest court if the petitioner has described both the operative facts and the federal legal theory on which the claim is based. *Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003) (overruled on other grounds, *Robbins v. Carey*, 481 F.3d 1143, 1149 (9th Cir. 2007).

### c. Application to Petitioner's Claims

**Ground 1: IAC re Taped Interview** - In his Ground 1, Petitioner argues "that trial counsel was ineffective by not objecting to admission of Anthony Jackson's tape recorded interview with police" in violation of his rights under "Amendment 6 of the U.S. Constitution." (Petition, Doc. 1 at 6.) As Respondents concede, this was the same issue raised by Petitioner in his PCR proceeding, and it was fairly presented in the PCR court, the Arizona Court of Appeals, and the Arizona Supreme Court, and disposed of on its merits. Accordingly, the undersigned concludes that Petitioner's state remedies on this ground for relief were properly exhausted.

**Ground 2&3: IAC re Parents' Statements and Autopsy** – In his Ground 2, Petitioner argues that trial counsel was ineffective for failing to object to the admission of hearsay testimony about statements his parents made to a police detective. (Petition, Doc. 1 at 7.) Petitioner does not indicate whether he presented this claim to the Arizona Court of Appeals, but asserts it was raised in his First Petition, and was presented to the

Arizona Supreme Court. (*Id.*)

In his Ground 3, he argues trial counsel was ineffective for failing to object to the admission of the autopsy report. Petitioner asserts he raised this claim to the Arizona Court of Appeals on his first and second petitions, and to the Arizona Supreme Court. (*Id.* at 8.)

Petitioner did not assert these claims on direct appeal, which was limited to his challenges to the sufficiency of the evidence and the consecutive sentence. (*See generally* Exhibits M, Opening Brief; O, Reply Brief; and Q, Petition for Review.)

Nor did Petitioner raise these claims in his PCR Petition. Petitioner did make a passing reference, in his "Procedural Background" to the stipulations to admit the autopsy and his parents' statements. (Exhibit U, PCR Pet. At 4.) And, he did challenge counsel's failures with regard to Jackson's statements in his PCR proceedings. (*See generally* Exhibits U, PCR Pet.; DD, PFR; and II PFR.) He also made a passing reference to trial counsel's: (1) failure to object to hearsay testimony by the victim's girlfriends' daughter; (2) hearsay by the detective's recitation of the daughter's statements; and (3) hearsay about statements by Jackson's wife. (Exhibit U at 20.) He did not, however, make any allegations concerning ineffectiveness of counsel as a result of the statements by his parents or the autopsy.

Although a federal habeas petitioner may reformulate somewhat the claims made in state court, *Tamapua v. Shimoda*, 796 F.2d 261, 262 (9th Cir. 1986), *rev'd in part on other grounds by Duncan v. Henry*, 513 U.S. 364 1995), the substance of the federal claim must have been "fairly presented" in state court. *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*); *Picard v. Connor*, 404 U.S. 270, 278 (1971); *Tamapua*, 796 F.2d at 262. Thus, a petitioner may not broaden the scope of a constitutional claim in the

federal courts by asserting additional operative facts that have not yet been fairly presented to the state courts. Expanded claims not fairly presented in the state courts are not considered in a federal habeas petition. *Brown v. Easter*, 68 F.3d 1209 (9th Cir. 1995).

A shift from the very specific claims raised by Petitioner in his PCR proceeding to the instant, entirely new claims of deficient performance, is too great for this Court to find that Petitioner fairly presented the instant claims to the state courts.

Accordingly, the undersigned concludes that Petitioner's federal claims in Grounds 2 and 3 were not fairly presented to the state courts.

**Grounds 4&5: Insufficient Evidence re Kidnapping and Robbery** – In his Grounds 4 and 5, Petitioner complains that there was insufficient evidence to convict him on the, respectively, kidnapping and robbery counts. (Petition, Doc. 1 at 9, 9.1.) Petitioner alleges these claims were presented to the Arizona Court of Appeals on direct appeal, and to the Arizona Supreme Court. (*Id.*)

Petitioner did challenge on direct appeal the trial court's denial of his motions to acquit on these two charges. However, in doing so, Petitioner relied solely upon state law, and made no reference to any federal law or constitutional principles. (*See generally* Exhibits M, Opening Brief; O, Reply Brief; and Q, Petition for Review.)

While the petitioner need not recite "book and verse on the federal constitution," *Picard v. Connor*, 404 U.S. 270, 277-78 (1971) (quoting *Daugherty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)), it is not enough that all the facts necessary to support the federal claim were before the state courts or that a "somewhat similar state law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*).

It is true that "a citation to a state case analyzing a federal constitutional issue

10

serves the same purpose as a citation to a federal case analyzing such an issue." *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003). However, none of the cases relied on by Petitioner before the Arizona Court of Appeals analyzed sufficiency of the evidence under federal law. (*See* Exhibit M, Open. Brief at ii.) *See generally*, *State v. Carlisle*, 198 Ariz. 203, 8 P.3d 391 (App. 2000); *State v. Doss*, 192 Ariz. 408, 966 P.2d 1012 (App. 1998); *State v. Ferguson*, 119 Ariz. 55, 579 P.2d 559 (1978); *State v. Gallegos,* 178 Ariz. 1, 870 P.2d 97 (1994); *State v. Gordon*, 161 Ariz. 308, 778 P.2d 1204 (1989); *State v. Greene*, 192 Ariz. 431, 967 P.2d 106 (1998); *State v. Lewis*, 169 Ariz. 4, 816 P.2d 263 (App. 1991);[3] *State v. Mathers*, 165 Ariz. 64, 796 P.2d 866 (1998); *State v. Styers,* 177 Ariz. 104, 865 P.2d 765 (1993); and *State v. Tinghitella*, 108 Ariz. 1, 491 P .2d 834 14.

Respondents note that *State v. Mathers*, cited by Petitioner in his Opening Brief on direct appeal, does contain a reference to *Jackson v. Virginia*, 442 U.S. 307 (1979), the sentinel case on the constitutional requirement for sufficient evidence. (Answer Doc. 12 at 16.) However, *Mathers* was ultimately a determination whether, under Ariz.R.Crim.Proc. 20 (motions for acquittal) and Ariz.Rev.Stat. § 13-115(A) (burden of proof), there was sufficient evidence to convict. *Mathers* discussed *Jackson* only to reference its standard based on a "rational juror" rather than the actual jury in the case. Even if that reference indicated a reliance upon federal law in *Mathers* (as opposed to the use of *Jackson* as persuasive authority), such a citation to a federal case is not sufficient.

> For a federal issue to be presented by the citation of a state decision dealing with both state and federal issues relevant to the claim, the citation must be accompanied by some clear indication that the case involves federal issues. Where, as here, the citation to the state case

---

[3] Improperly cited in the Opening Brief as "168 Ariz. 4, 816 P.2d 262 (App. 1991." [sic] Exhibit M at i .

11

> has no signal in the text of the brief that the petitioner raises federal
> claims or relies on state law cases that resolve federal issues, the
> federal claim is not fairly presented.

*Casey v. Moore*, 386 F.3d 896, 912 (9th Cir. 2004). In the instant case, Petitioner's brief made no indication that he intended to rely upon whatever portion of *Mathers* could be said to be founded upon federal law. (Exhibit M, Opening Brief at 9-10.) Accordingly, the undersigned concludes that a citation to *Mathers* was not sufficient to fairly present Petitioner's federal claim.

Petitioner did not assert any claims based on the sufficiency of the evidence in his PCR proceedings.

Accordingly, the undersigned concludes that Petitioner's federal claims in Grounds 4 and 5 were not fairly presented to the state courts.

**Ground 6: Due Process and Consecutive Sentence** – In his Ground 6, Petitioner asserts that he was denied his right "to a fair verdict as guaranteed by the Amendments 5, 6 & 14 of the U.S. Constitution" by making his sentence on the robbery count consecutive to his sentence on the kidnapping charge. Petitioner argues he presented this claim on direct appeal. (Petition, Doc. 1 at 9.2.)

While Petitioner complained about the consecutive sentence in his direct appeal, he did so solely on the basis that the consecutive sentence was not authorized under Ariz. Rev. Stat. § 13-116, which prohibits double punishments for a single act, and related state cases defining when a series of related crimes constitute one act. (Exhibit M, Opening Brief at 14-16.) The Arizona Court of Appeals resolved the claim on the basis of its application of that statute. (Exhibit P, Mem. Dec. at 12-14.) Presentation of a related state law claim is not fair presentation of a federal claim. *Anderson*, 459 U.S. at 6.

Petitioner did not reassert the claim to the Arizona Supreme Court (Exhibit Q, Petition for Review), nor did he raise it in his PCR Proceeding (*see generally* Exhibits U, PCR Pet.; DD, Pet. Rev.; II, Pet. Rev.).

Accordingly, the undersigned concludes that Petitioner's federal claim in Grounds 6 was not fairly presented to the state courts.

**Ground 7: Due Process and Presumption of Guilt**- In his Ground 7, Petitioner argues that the trial court improperly adopted a presumption of guilt: (1) when the judge stated "proof is not evident but the presumption is great that the defendant committed this crime;" and (2) because there was insufficient evidence to convict. Petitioner concedes he did not present this claim to the state courts. (Petition, Doc. 1 at 9.3.)

As discussed *supra* with regards to Grounds 4 and 5, the only claims of insufficient evidence raised by Petitioner to the state courts were his claims with regard to the kidnapping and robbery convictions, and neither of these was asserted as a federal claim. No federal or state law claim was made on direct appeal or in his PCR proceeding that a presumption of guilt was applied.

Accordingly, the undersigned concludes that Petitioner's federal claims in Ground 7 were not fairly presented to the state courts.

**Summary re Exhaustion** - Based upon the foregoing, the undersigned finds that Petitioner has established fair presentation and proper exhaustion of his state remedies only on his Ground 1 (ineffective assistance re taped interview). The balance of his claims, including Grounds 2, 3, 4, 5, 6, and 7, were not properly exhausted.

**2. Procedural Default**

Ordinarily, unexhausted claims are dismissed *without prejudice*. *Johnson v.*

*Lewis*, 929 F.2d 460, 463 (9th Cir. 1991). However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief. Dismissal *with prejudice* of a procedurally barred or procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would excuse the default. *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents argue that Petitioner is "procedurally barred" from presenting his unexhausted claims to the state courts. Respondents do not specifically identify the procedural rules upon which they rely. However, it appears that Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a) and time bars, set out in Ariz. R. Crim. Proc. 31.3 and 32.4(a) both would bar presentation of the unexhausted claims.

**Remedies by Direct Appeal** - Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence. The Arizona Rules of Criminal Procedure do not provide for a successive direct appeal. *See generally* Ariz.R.Crim.P. 31. Accordingly, direct appeal is no longer available for review of Petitioner's unexhausted claims.

**Remedies by Post-Conviction Relief** - Petitioner can no longer seek review by a subsequent PCR Petition. Under the rules applicable to Arizona's post-conviction process, a claim may not ordinarily be brought in a petition for post conviction relief that "has been waived at trial, on appeal, or in any previous collateral proceeding." Ariz.R.Crim.P. 32.2(a)(3). Under this rule, some claims may be deemed waived if the State simply shows "that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding." *Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067,

1070 (2002) (quoting Ariz.R.Crim.P. 32.2, Comments). For others of "sufficient constitutional magnitude," the State "must show that the defendant personally, "knowingly, voluntarily and intelligently' [did] not raise' the ground or denial of a right." *Id.* That requirement is limited to those constitutional rights "that can only be waived by a defendant personally." *State v. Swoopes* 216 Ariz. 390, 399, 166 P.3d 945, 954 (App.Div. 2, 2007). In coming to its prescription in *Stewart v. Smith*, the Arizona Supreme Court identified: (1) waiver of the right to counsel, (2) waiver of the right to a jury trial, and (3) waiver of the right to a twelve-person jury under the Arizona Constitution, as among those rights which require a personal waiver. 202 Ariz. at 450, 46 P.3d at 1071.[8]

Here, Petitioner's unexhausted claims do not fit within the list of claims identified as requiring a personal waiver. Nor are they of the same character. Therefore, it appears that Petitioner's claims would be precluded by his failure to raise them in an earlier proceeding.

Timeliness Bar - Even if not barred by preclusion, Petitioner would now be barred from raising his claims by Arizona's time bars. Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later." *See*

---

[8] Some other types of claims addressed by the Arizona Courts in resolving the type of waiver required include: ineffective assistance (waived by omission), *Stewart,* 202 Ariz. at 450, 46 P.3d at 1071; right to be present at non-critical stages (waived by omission), *Swoopes*, 216Ariz. at 403, 166 P.3d at 958; improper withdrawal of plea offer (waived by omission), *State v. Spinosa*, 200 Ariz. 503, 29 P.3d 278 (App. 2001); double jeopardy (waived by omission), *State v. Stokes*, 2007 WL 5596552 (App. 10/16/07); illegal sentence (waived by omission), *State v. Brashier*, 2009 WL 794501 (App. 2009); judge conflict of interest (waived by omission), *State v. Westmiller*, 2008 WL 2651659 (App. 2008).

*State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule). That time has long since passed.

Exceptions - Rules 32.2 and 32.4(a) do not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h). *See* Ariz. R. Crim. P. 32.2(b) (exceptions to preclusion bar); Ariz.R.Crim.P. 32.4(a) (exceptions to timeliness bar). Petitioner has not asserted that any of these exceptions are applicable to his claims. Nor does it appear that such exceptions would apply. The rule defines the excepted claims as follows:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:
> (1) The newly discovered material facts were discovered after the trial.
> (2) The defendant exercised due diligence in securing the newly discovered material facts.
> (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.
> f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or
> g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or
> h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

Paragraph 32.1(d) (expired sentence) generally has no application to an Arizona prisoner, like Petitioner, who is simply attacking the validity of his conviction or sentence.

16

Petitioner asserts no newly discovered evidence, and his factual assertions have all been previously argued to the state courts. Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application.

Paragraph (f) has no application because Petitioner's appeal was timely.

Paragraph (g) has no application because Petitioner has not asserted a change in the law since his last PCR proceeding.

Finally, paragraph (h), concerning claims of actual innocence, has no application to Petitioner's procedural claims. *See State v. Swoopes*, 216 Ariz. 390, 404, 166 P.3d 945, 959 (App. 2007) (32.1(h) did not apply where petitioner had "not established that trial error ...amounts to a claim of actual innocence").

**Summary** - Accordingly, the undersigned must conclude that review through Arizona's direct appeal and post-conviction relief process is no longer possible for Petitioner's unexhausted claims, and that the unexhausted claims are now procedurally defaulted, and absent a showing of cause and prejudice or actual innocence, must be dismissed with prejudice.

**3. Cause and Prejudice; Actual Innocence**

If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default. *Reed v. Ross*, 468 U.S. 1, 11 (1984).

"Cause" is the legitimate excuse for the default. *Thomas*, 945 F.2d at 1123. "Because of the wide variety of contexts in which a procedural default can occur, the

Supreme Court 'has not given the term "cause" precise content.'" *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (quoting *Reed*, 468 U.S. at 13), *cert. denied*, 498 U.S. 832 (1990). The Supreme Court has suggested, however, that cause should ordinarily turn on some objective factor external to petitioner, for instance:

> ... a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that "some interference by officials", made compliance impracticable, would constitute cause under this standard.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

Moreover, both "cause" and "prejudice" must be shown to excuse a procedural default, although a court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991). Accordingly, this Court need not examine the merits of Petitioner's claims or the purported "prejudice" to find an absence of cause and prejudice.

Here, Petitioner does not proffer any good cause to excuse his failures to exhaust. The only pretense Petitioner makes of establishing cause is his assertion in Ground 7 that he brought the claims in Ground 7 to counsel's attention, counsel failed to raise them, and because of Petitioner's handicaps as a *pro se* prisoner dependent upon other inmates he could not raise it himself.

Ineffective assistance of counsel may constitute cause for failing to properly exhaust claims in state courts and excuse procedural default. *Ortiz v. Stewart,* 149 F.3d 923, 932, (9th Cir. 1998). However, a claim of ineffective assistance of counsel showing "cause" is itself subject to the exhaustion requirements. *Murray v. Carrier*, 477 U.S. 478, 492 (1986); *Edwards v. Carpenter*, 529 U.S. 446 (2000). Accordingly, "[t]o the extent that petitioner is alleging ineffective assistance of appellate counsel as cause for

18

the default, the exhaustion doctrine requires him to first raise this ineffectiveness claim as a separate claim in state court." *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988). Petitioner has not exhausted state remedies on a claim of ineffective assistance of appellate counsel. Rather, his PCR petition was clearly limited to arguing that "his trial lawyers clearly were ineffective." (Exhibit U, PCR Pet. at 16.)

Nor has Petitioner shown that his disabilities prevented him from asserting to the State courts the claims he now asserts. The "cause and prejudice" standard is equally applicable to pro se litigants, *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990); *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 908 (9th Cir. 1986), whether literate and assisted by "jailhouse lawyers", *Tacho*, 862 F.2d at 1381; illiterate and unaided, *Hughes*, 800 F.2d at 909, or non-English speaking. *Vasquez v. Lockhart*, 867 F.2d 1056, 1058 (9th Cir. 1988), cert. denied, 490 U.S. 1100 (1989).

Thus, the undersigned must conclude that Petitioner has failed to show "cause" to excuse his procedural defaults.

**Actual Innocence** - The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances, to avoid a "miscarriage of justice." *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986). Accordingly, failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added). Although not explicitly limited to actual innocence claims, the Supreme Court has not yet recognized a "miscarriage of justice" exception to exhaustion outside of actual innocence. *See* Hertz & Lieberman, *Federal Habeas Corpus Pract. & Proc.*, §26.4 at 1229, n. 6 (4th ed. 2002 Cumm. Supp.). The Ninth Circuit has expressly

limited it to claims of actual innocence.  *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008).

Here, Petitioner makes no pretense of asserting his actual innocence.  It is true that a number of Petitioner's grounds for relief (4, 5, and 7) assert an insufficiency of evidence to convict, such a claim (even if established) does not amount to a showing of actual innocence.

Rather, a petitioner asserting his actual innocence of the underlying crime must show "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" presented in his habeas petition.  *Schlup v. Delo,* 513 U.S. 298, 327 (1995).  A showing that a reasonable doubt exists in the light of the new evidence is not sufficient.  Rather, the petitioner must show that no reasonable juror would have found the defendant guilty.  *Id.* at 329.

Moreover, a finding of "actual innocence" is not to be based upon a finding that insufficient evidence to support the charge was presented at trial, but rather upon affirmative evidence of innocence.  *See U.S. v. Ratigan*, 351 F.3d 957 (9th Cir. 2003) (lack of proof of FDIC insurance in a  bank robbery case, without evidence that insurance did not exist, not sufficient to establish actual innocence).

> [T]he prisoner must "show a fair probability that, in the light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial, the trier of the facts would have entertained a reasonable doubt of his guilt."

*Kuhlmann v. Wilson*, 477 U.S. 436, 455 n. 17 (1986) (quoting Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U.Chi.L.Rev. 142, 160 (1970)).

Petitioner offers no new, affirmative evidence to establish his actual innocence.

**Summary re Procedural Default** – Petitioner fails to show "cause" or actual innocence to excuse his procedural defaults. Accordingly, Petitioner's procedurally defaulted claims must be dismissed with prejudice.

## B. GROUND 1: INEFFECTIVE ASSISTANCE RE TAPED INTERVIEW

For his Ground 1, Petitioner argues that trial counsel was ineffective for stipulating to the admission of the taped interview of Anthony Jackson (the shuttle driver who assisted him in disposing of the body and with whom he split the money taken from the victim). (Petition, Doc. 1 at 6.)

Respondents argue that the PCR court's rejection of this claim was not "contrary to" nor an "unreasonable application of" Supreme Court law. (Answer, Doc. 12 at 20-21.)

**State Court's Decision** - The Arizona Court of Appeals and Arizona Supreme Court issued summary denials of Petitioner's Petitions for Review in his PCR proceeding. (Exhibits HH, Order 11/23/09, and LL, Order 6/2/10) Because it was the last reasoned decision, this Court looks through to the decision of the PCR Court, as embodied in its order issued June 9, 2008 (Exhibit Z). *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

> The Court does not find a colorable claim has been presented for relief: Although the Court will never know why the jury concluded beyond a reasonable doubt this Defendant was guilty, it is fair to say that Anthony Jackson's hearsay statement was equivocal at best. It is not reasonable to conclude it was the critical evidence of conviction. Similarly, although *Crawford v. Washington*, 541 U.S. 36 may indeed have prevented the introduction of the statements of Jackson. The stipulation of counsel to admit such evidence, at trial and now in these pleadings demonstrates clearly a strategic decision is at best invited error. The Court does not find this record supports either

deficient performance by counsel or a prejudice to the Defendant.as a result of deficient performance.

(Exhibit Z, Order 6/9/08.)

**Standard on Ineffective Assistance** - Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on such a claim, Petitioner must show:  (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at  687-88

**Limits on Habeas Relief** - While the purpose of a federal habeas proceeding is to search for violations of federal law, not every error justifies relief.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." *Woodford v. Visciotti*, 537 U. S. 19, 24- 25 (2002) (*per curiam*).  Ordinarily, to justify habeas relief, a state court's decision must be "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" before relief may be granted.  28 U.S.C. §2254(d)(1).  Federal courts are also authorized to grant habeas relief in cases where the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

**Application to Ground 1** - Here, the PCR court found that counsel's decision to stipulate to the admission of Jackson's taped interview was a strategic decision and not deficient performance. Indeed, tactical decisions with which a defendant disagrees cannot form the basis for a claim of ineffective assistance of counsel.  *Morris v.*

*California*, 966 F.2d 448, 456 (9th Cir. 1991), *cert. denied*, 113 S. Ct. 96 (1992). "Mere criticism of a tactic or strategy is not in itself sufficient to support a charge of inadequate representation." *Gustave v. United States*, 627 F.2d 901, 904 (9th Cir. 1980).

Here, the tactical decision was a reasonable one. As pointed out by Respondents (Answer, Doc. 12 at 26), Petitioner's counsel faced substantial damning evidence, including Petitioner's confessions to: the club cashier, his high school friend, and a cell mate. In addition, Jackson had already pled guilty based upon the story related in his taped interview, *i.e.* that Petitioner was the murder. (*See* Exhibit U, PCR Pet. at 9-11 (summarizing interview and plea colloquy.) Without the stipulation, trial counsel could anticipate, at a minimum, Jackson's live testimony to the same effect, if perhaps only by impeachment on his prior statements. Such impeachment would effectively introduce the taped interview.

In exchange, the defense obtained a stipulation to admit Jackson's letter recanting his blame of Petitioner and instead blaming Jackson's wife. (*See* Exhibit NN, Stipulation.) To obtain admission of this, Petitioner would have first had to have Jackson testify to the contrary, *i.e.* that Petitioner was the murderer, which would have simply been a more potent version of the testimony allowed in under the stipulation.

By stipulating to the admission of all of the out of court statements by Jackson, the defense got to leave the jury with hearsay on conflicting stories by Jackson, without the risk that Jackson's live testimony would be particularly convincing or damning, or that Jackson would successfully explain away his letter blaming his wife.

Petitioner has never offered anything to counter the reasonableness of this tactical decision. (*See* Petition, Doc. 1 at 6; Exhibit U, PCR Pet. at 18-22; Exhibit X PCR Reply at 2; Exhibit DD, Pet. Rev. at 14-15.) At best, Petitioner argued in his reply brief in his

Petition for Review that the value of the recantation was markedly less than the damage of the taped interview, and the introduction of the recantation may have been suborning perjury. (Exhibit GG, PFR Reply at 3-5.) However, Petitioner's arguments ignore the likely outcome of a refusal to stipulate, *i.e.* that the State would have simply called Jackson to testify. (*See* Exhibit F, R.T. 1/18/02 at 27 (discussion of calling Jackson as witness).)

Thus, the undersigned concludes that it was a reasonable tactical decision for counsel to stipulate to the admission of Jackson's taped interview, and therefore it was not defective performance. Therefore, the undersigned cannot conclude that the PCR court's rejection of this claim was contrary to or an unreasonable application of Supreme Court law.

Although the petitioner must prove both elements, a court may reject a claim of ineffective assistance upon finding either that counsel's performance was not deficient or that the claimed error was not prejudicial. *Strickland*, 466 U.S. at 697. Because the undersigned finds a clear lack of deficient performance, the undersigned does not reach the prejudice prong.

Having failed to establish deficient performance, Petitioner's Ground 1 is without merit and must be denied.


**C. SUMMARY**

Petitioner's Ground 1 is without merit, and must be denied. Petitioner's state remedies on Grounds 2, 3, 4, 5, 6, and 7 are procedurally defaulted and Petitioner has failed to excuse his procedural default, and thus these grounds must be dismissed with prejudice.

## IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be in part on procedural grounds, and in part on the merits.

To the extent that Petitioner's claims are rejected on procedural grounds, under the reasoning set forth herein, the undersigned finds that "jurists of reason" would not "find it debatable whether the district court was correct in its procedural ruling."

To the extent that Petitioner's claims are rejected on the merits, under the reasoning set forth herein, the constitutional claims are plainly without merit.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Grounds 2, 3, 4, 5, 6, and 7 of the Petitioner's Petition for Writ of Habeas Corpus, filed April 8, 2011 (Doc. 1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** the remainder of Petitioner's Petition for Writ of Habeas Corpus, filed April 8, 2011 (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that to the extent the reasoning of this Report & Recommendation is adopted, that a certificate of appealability be **DENIED**.

## V. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 8(b), Rules Governing Section 2254 Proceedings. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues, *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*), and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: December 14, 2011

11-8052r RR 11 12 08 on HC.docx

James F. Metcalf
United States Magistrate Judge